

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF FLORIDA

MAURICE SYMONETTE,KURT
MARIN,JAMES LITTLEJOHN,ALFRED
DAVIS AND JAMES BUCKMAN

CASE NO   **12-CV-23767**

**Jury Trial Demanded**

      Plaintiff,

      vs.

THE TOWERS OF QUAYSIDE HOMEOWNERS

ASSOCIATION, INC., RICHARD BARON &

ASSOCIATES INC. AUROURA LOAN SERVICES INC.

.

      Defendant(s)
_____ /

## MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO ABATE, AND MOTION TO STRIKE

     Comes now, KURT MARIN et al. (herein "Plaintiff"), pro se, and states as follows:

## COMPLAINT

Plaintiff, MAURICE SYMONETTE et al., individually, hereby sues Defendants, THE
TOWERS OF QUAYSIDE HOMEOWNERS ASSOCIATION, INC (herein "HOA"),  LAW
OFFICES Of RICHARD BARON & ASSOCIATES, and RICHARD BARON & AURORA
LOAN SERVICES INC.

(herein Defendants) for violations of the Fair Debt Collection Practices Act (FDCPA)15 U.S.C.
§ 1692, and the Florida Consumer Collection Practices Act (FCCPA), FLA. STAT. §559(Part
VI).  the Plaintiffs constitutional right to due process, abuse of process, civil theft, civil
conspiracy, illegal eviction, harassment, discrimination based on race, trespassing, unlawful
trespass, unlawful possession of property (locked the door), violation of bankruptcy stay, etc.

violation of the Plaintiff due process rights guaranteed under the Fourteenth Amendment's due
process clause.

## JURISDICTION

1. Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of
   Title 28 of the United Stated Code in that this proceeding arises in and is related to
   the above-captioned Chapter 7 case under Title 11 and concerns property of the
   Plaintiff's landlord KURT MARIN.

2. This Court has supplemental jurisdiction to hear all state law claims pursuant to
   Section 1367 of Title 28 of the United States Code.

## VENUE

3. This is an action for damages brought by two individual consumers for Defendant's
   violation of The Fair Debt Collection Practices Act, 15 U.S.C. §1692 et. seq.
   (hereinafter "FDCPA"), The Florida Consumer Collection Practices Act, §559.72,
   Fla. Stat. (2009), (hereinafter FCCPA), state claims and the common law of the State
   of Florida.

4.   This Court's jurisdiction arises under 15 U.S.C. §1692k(d) and  28 U.S.C. § 1337. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over them related state law claims.

This is an action for damages which exceed $5,000,000.00.

5.   Plaintiffs are natural persons, over the age of 18, residing in the City of Miami, in Dade County, Florida.

6.   Defendant Law Offices of RICHARD BARON & ASSOCIATES (hereinafter "Defendant") is a Florida corporation with its principle place of business in the City of Miami-Dade County, Florida.

7.   Defendant RICHARD BARON of the Law Offices of RICHARD BARON & ASSOCIATES  LAW FIRM (hereinafter "Defendant") is a resident of Florida and works as a debt collector for QUAYSIDE in the City of Miami-Dade County, Florida.

8.   Although Defendant is a law firm, it contracts with a number of related entities to perform various services related to the collection of debts arising from Home Owner's Association liens (herein HOA) liens.

9.   Defendant RICHARD BARON and the Law Offices of RICHARD BARON & ASSOCIATES  LAW FIRM are Defendants and they perform primarily debt collection for QUAYSIDE.  Defendant files a substantial percentage of debt collection complaints in and around Miami-Dade County in the State of Florida.

10.  The principle portion of Defendant's activities involves the collection of consumer debts using the mails, the telephone and the courts. Defendant regularly attempts to collect debts alleged to be due to another.

11.     Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

## PRELIMINARY STATEMENT

12.     This is an action for damages and injunctive relief brought by Plaintiff against

Defendant for violations of the Fair Debt Collection Practices Act (FDCPA)15 U.S.C.

§ 1692 e, Fair Debt Collection Practices Act (FDCPA) 15 USC § 1692 e(2), Fair Debt

Collection Practices Act (FDCPA) 15 USC § 1692 f,  Fair Debt Collection Practices

Act (FDCPA)15 U.S.C. § 1692 f(1)and the Florida Consumer Collection Practices

Act (FCCPA), FLA. STAT. §559(Part VI) and state claims more fully stated herein.

13.     Upon belief and information, Plaintiff contends that many of these practices are

widespread for some or all of the Defendants.  Plaintiff intends to propound discovery

to Defendants identifying these other individuals who have suffered similar

violations, U.S. Bankruptcy stay.

**14.**     Plaintiff contends that the Defendants have violated such laws by repeatedly

harassing Plaintiff in attempts to evict the Plaintiff, in an unconscionable and vicious

collection of a debt.

## FACTUAL ALLEGATIONS

15.     On or about 3/15/2012, and HOA's foreclosure case #12-4200 ca 02/02/12 and

03/27/2012 at the 341 meeting and notice of termination of entry dated 04/18/12  the

Plaintiff was served with these law suits and demand for payment by Defendant

QUAYSIDE HOA demanding payment for HOA fees. Exhibit (A),

(B=341 Bankruptcy meeting on tape) & (H).

16.    On or about 3/19/2012 the Plaintiff sent a request for validation of debt, request for a full accounting and full access to the HOA books and records before payment was to be made. Exhibit (C).

17.    The HOA has not given access to the books and records Exhibit (D1 & D2 & D3) from 03/19/12 to 04/16/12 to 05/02/12 til this day in violation of Florida Statutes Chapter 720.

18.    The HOA failed to respond within 30 days to the Plaintiff's request for Validation of Debt. Plaintiff had no obligation to pay Defendants and the Defendant was to Cease and Desist collection activity until proper validation was received pursuant to the Fair Debt Collection Practices Act (FDCPA). Defendants also knew that Plaintiff Marin was in Bankruptcy thereby violating the bankruptcy stay order and (FDCPA) by conspiring with Aurora Bank and continuing to racially evict Blacks (E, Affidavits, F, Affidavits, is proof HOA was told of Bankruptcy Stay, Exhibit (G), Exhibit (B) 341 meeting tape with HOA Atty. Baron 03/27/12 showing he knew of the stay). Yet HOA and Aurora Bank ran over the USA Bankruptcy stay by continuing illegal Constructive Eviction.

20     The HOA turned off the water to the Plaintiffs premises to force us to move out (Constructive illegal Eviction). Exhibit (H, I and J). Note there is no water bill for any residents at Quayside premises for the whole 6 years we were there and we demand strict documented proof of any water bills. Exhibit (C).

21    After the Plaintiff's request for Validation of Debt, the HOA denied the Plaintiff access
to the premises with an illegal eviction without any Judge's order, with HOA's guards grabbing
Plaintiffs arm and taking him out of house and guard gate with just a letter from Atty. Richard
Baron ORDERING Owner and legal occupants be put out, exhibit (H).

22   The Defendant HOA entered the Plaintiff's premises without a court order and began an
illegal eviction.

23   While in the act of this illegal eviction after they would not allow us back in the gate and
unlawful trespass, unknown Defendants and HOA guards illegally removed two gold
Rolex Presidential watches, $20,000 in cash, several priceless family heirlooms, pictures,
blankets, designer shoes, designer men's suits, several gold rings, several gold bracelets,
two gold money clips and a gold and platinum coin collection.  The total value of the
items lost was well over $350,000 (see itemized list of missing items Exhibit (K).

24   Hours after the fact, the Plaintiff learned of the illegal entry and was alarmed, distressed,
frustrated, and felt emotional distressed because of the trespass and questioned the
unknown Defendants HOA guards.

25   The unknown Defendants called the Miami Dade Police on us and the Defendants were
told that they were in the process of an illegal eviction by Police demanded that the
Plaintiff have immediate access to his property saying this was a Cival matter and you
can't evict without a Judges order. Exhibit (L).

26   The Plaintiff, concerned for his safety and without water, was unable to stay in his
property and was deprived of the rights to access his property.

27   The Plaintiff attempted to question the parties about the missing articles, civil theft, trespass and the violation of due process.

28   The Defendant again and for the third time called the Miami Dade Police Department.

29   Again the Police was called and again the HOA was violating the law, that they were carrying out an illegal eviction and they needed to cease the illegal acts.

30   On 05/15/12 the HOA was required by Judge HENDON in the HOA eviction case #12-05802-cc-23 that they were required to turn the water back on and give the Plaintiff access to his property. Exhibit (M1) & (M2). According to 2011 Fl. Statute 718.303 paragraph 4 HOA is not allowed to turn off utilities. Exhibit (N).

31   The Police insisted that the HOA needed to Cease and Desist the illegal collection activity and that if they were called again, the HOA officials as agents for HOA would be arrested for carrying out illegal collections, trespassing and ejection of the Plaintiff's property. Exhibit (L, saying take this to court it's a Cival Matter).

32   On March 30, 2011 the Defendant through mediation and a pre-trial conference knowingly violated Federal and State law by continuing to attempt to collect a disputed debt prior to validation and verification. Exhibit (O1 & O2).
On January 3, 2012   the Plaintiff(s) filed for bankruptcy Exhibit (P & Q).

33   On March 15, 2012 and again on March 30, 2011 Defendants used false representation to collect or attempt to collect a debt.

34   On March 15, 2012 and again on March 30, 2011, asserted a right which it lacks, to wit, the right to enforce a debt.

35  On April 10, 2012 the Plaintiff made all the aforementioned facts known to Attorney RICHARD BARON and RICHARD BARON replied "I'm going to get you little black boys out of Quayside." Exhibit (F).

**36**  Plaintiffs are in violation of Florida Statutes 559.715, which are a condition precedent and applies to those entities receiving assignments of consumer debts and, having failed to comply by providing notice to Defendant within 30 days after assignment, Plaintiff is precluded as a matter of law from bringing the action in any court of Florida.

## VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA), 15 U.S.C. §1692 BY DEFENDANT QUAYSIDE, Law Offices of RICHARD BARON LAW FIRM

37  Plaintiff alleges and incorporates the information in paragraphs 1 through 17.

38  Plaintiff is a consumer within the meaning of the FDCPA, 15 U.S.C. §1692a(3)

39  Defendant RICHARD BARON & ASSOCIATES LAW FIRM, is a debt collector within the meaning of the FDCPA, 15 U.S.C. §1692a (6).

40  Defendant RICHARD BARON is a debt collector within the meaning of the FDCPA, 15 U.S.C. §1692a (6).

41  All Defendants violated the FDCPA. Defendant's violations include, but are not limited to, the following:

    a)  Defendants violated 15 U.S.C. 1692e (2) by falsely representing the character, amount, or legal status of any debt.

b) Defendants violated 15 U.S.C. §1692f (1) by the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

c) Defendants continued collection activity after receiving notice of dispute, and failed to provide written validation of debt before resuming collection activities, in violation of 15 U.S.C.§2042g(b) and in violation of the USA Bankruptcy Stay.

**WHEREFORE,** Plaintiff demands judgment for damages against, Law Offices of RICHARD BARON & ASSOCIATES or actual or statutory damages, and punitive damages, attorney's fees and costs, pursuant to the FDCPA.

## CONSTRUCTIVE EVICTION QUAYSIDE

42 Plaintiffs incorporate herein by reference paragraphs 1 through 54 of this complaint.

43 Defendants have wrongfully threatened to and interfered with plaintiffs' quiet use and possession of the property.

44 The Defendants all conspired to deprive the Plaintiff to due process.

45 By repeatedly calling the police and refusing the Plaintiff access to public areas, elevators, his mail box, and passage through the guard gate, the Plaintiff was blocked access to his property.

46 On or about JANUARY 3 2012 Plaintiff, filed for Chapter 7 bankruptcy protection Case # 12-10066LMI, at the end of Feb. bankruptcy STAY WAS IN FULL EFFECT.

47 At the end of Feb. Defendants, in an effort to forcefully evict the Plaintiff, turned off the water utilities to the Plaintiff's home.

48 The Plaintiff is a resident and a tenant of QUAYSIDE.

49 The Plaintiff is protected under Florida Law as a tenant to whit:

**CONSTRUCTIVE EVICTION.** The landlord may not cause directly or indirectly:

a. Interruption of any utility service furnished the tenant. Includes: utilities under the control of or paid by landlord or provided for in the lease. Examples include; heat, gas, water, electricity, garbage collection, and refrigeration. Fla. Stat. § 83.67(1). [But see <u>Badaraco v Suncoast Towers v. Associates</u>, 676 So. 2d 502 (Fla. 3d DCA 1996) which held that tenant could not recover statutory damages where temporary interruption of water and elevator services was due to landlord's general repairs and renovations and were not intended as a self help eviction].

b. Change locks or use any boot lock or similar device.

c. Remove outside doors, locks roof, walls, or windows except for maintenance, repair etc.

d. Remove personal property except after surrender, abandonment or a lawful eviction.

e. Examples of CONSTRUCTIVE EVICTION:

i. Apartment is uninhabitable due to water damage from unrepaired roof. <u>Ralston Inc. v. Miller</u>, 357 So. 2d 1066 (Fla. 3d DCA 1978);

ii. LL threatened eviction causing tenant to vacate. <u>Caso v. Nelson</u>, Inc., 419 So. 2d 668 (Fla. 4th DCA 1982).

iii. Peeping Tom landlord <u>John Kaminski Jr. v. Dynelle Gibson</u> Case 05-CC-02240LT 13th Judicial Hillsboro County, FL [13 Fla L. weekly Supp. 105]

2. Landlord may not discriminate against a service member 83.67(3)

3. Landlord shall not prohibit a tenant from displaying a U.S. Flag not larger than 4.5'x6'

**4. Remedy:**

(a) LL liable for actual and consequential damages or 3 months rent, whichever is greater, and costs, including attorney fees.

(b) Subsequent or repeated violations, which are not contemporaneous with the initial violation, shall be subject to separate awards of damages.

Punitive damages for self help may be possible if T can show self help was done with fraud, actual malice, or deliberate violence or oppression, or when LL acts willfully or with such gross negligence as to indicate a wanton disregard of rights of others.

50  The Defendant RICHARD BARON as representative of RICHARD BARON used a racial slur (Little Black Boys) to further oppress, harass and frustrate the Plaintiff in the collection of a debt in violation of the defendants civil rights against discrimination.

51  The total rental payments for the subject property are $9900.00

52  The Plaintiff is entitled to treble damages of the mortgages.

53  Because Defendants and Defendants security threatened and continue to threaten the use of force and violence against Plaintiffs, Plaintiffs were unable to re-claim possession of their home.

**WHEREFORE,** Plaintiff demands judgment for damages against Defendant QUAYSIDE for actual or statutory damages, and punitive damages, attorney's fees and costs, and treble damages for constructive eviction and other fines or award of $1,000,000 or as the court sees as just.

## VIOLATION OF OBAMA SAVING TENANTS ACT
### AND VIOLATION OF FEDERAL BANKRUPTCY STAY

54  The Plaintiff James Littlejohn and Alfred Davis avers that as a tenant, he was protected by the Obama Saving Tenants Act of 2009 to whit: and Maurice Symonette was in

Bankruptcy and had an automatic stay under Title11. Bankruptcy US code chapter.3 subchapter.111 admin. 11 USC subsection 362 Automatic stay. Exhibit (R).

### TITLE VII--PROTECTING TENANTS AT FORECLOSURE ACT
### SEC. 701. SHORT TITLE.

This title may be cited as the `Protecting Tenants at Foreclosure Act of 2009'.

SEC. 702. EFFECT OF FORECLOSURE ON PRE EXISTING TENANCY.

(a) In General- In the case of any foreclosure on a federally-related mortgage loan or on any dwelling or residential real property after the date of enactment of this title, any immediate successor in interest in such property pursuant to the foreclosure shall assume such interest subject to--

(1) the provision, by such successor in interest of a notice to vacate to any bona fide tenant at least 90 days before the effective date of such notice; and

(2) the rights of any bona fide tenant, as of the date of such notice of foreclosure--

(A) under any bona fide lease entered into before the notice of foreclosure to occupy the premises until the end of the remaining term of the lease, except that a successor in interest may terminate a lease effective on the date of sale of the unit to a purchaser who will occupy the unit as a

primary residence, subject to the receipt by the tenant of the 90 day notice under paragraph (1); or

(B) without a lease or with a lease terminable at will under State law, subject to the receipt by the tenant of the 90 day notice under subsection (1), except that nothing under this section shall affect the requirements for termination of any Federal- or State-subsidized tenancy or of any State or local law that provides longer time periods or other additional protections for tenants.

(b) Bona Fide Lease or Tenancy- For purposes of this section, a lease or tenancy shall be considered bona fide only if--

(1) the mortgagor or the child, spouse, or parent of the mortgagor under the contract is not the tenant;

(2) the lease or tenancy was the result of an arms-length transaction; and

(3) the lease or tenancy requires the receipt of rent that is not substantially less than fair market rent for the property or the unit's rent is reduced or subsidized due to a Federal, State, or local subsidy.

(c) Definition- For purposes of this section, the term `federally-related mortgage loan' has the same meaning as in section 3 of the Real Estate Settlement Procedures Act of 1974 (12 U.S.C. 2602).

SEC. 703. EFFECT OF FORECLOSURE ON SECTION 8 TENANCIES.

Section 8(o)(7) of the United States Housing Act of 1937 (42 U.S.C. 1437f(o)(7)) is amended--

(1) by inserting before the semicolon in subparagraph (C) the following: `and in the case of an owner who is an immediate successor in interest pursuant to foreclosure during the term of the lease vacating the property prior to sale shall not constitute other good cause, except that the owner may terminate the tenancy effective on the date of transfer of the unit to the owner if the owner--

`(i) will occupy the unit as a primary residence; and

`(ii) has provided the tenant a notice to vacate at  least 90 days before the effective date of such notice.'; and

(2) by inserting at the end of subparagraph (F) the following: `In the case of any foreclosure on any federally related mortgage loan (as that term is defined in section 3 of the Real Estate Settlement Procedures Act of 1974 (12 U.S.C. 2602)) or on any residential real property in which a recipient of assistance under this subsection resides, the immediate successor in interest in such property pursuant to the foreclosure shall assume such interest subject to the lease between the prior owner and the tenant and to the housing assistance payments contract between the  prior owner and the public housing agency for the occupied unit, except that this provision and the provisions related to foreclosure in subparagraph (C) shall not shall not

affect any State or local law that provides longer time periods or other additional protections for tenants.'.

SEC. 704. SUNSET.

This title, and any amendments made by this title are repealed, and the requirements under this title shall terminate, on December 31, 2012.

55  Protecting Tenants at Foreclosure Act of 2009 (PTFA) is intended to stop the surprise announcement of a foreclosure and the immediate removal of tenants from properties. Section 702 of PTFA allows tenants who are living in a foreclosed property to remain for the duration of any unexpired lease.

56  Section 702 also provides that all tenants, even those without written leases, must be given at least 90 days' notice before they can be required to vacate and the right to remain in occupancy during that three month period.

57  Specifically, there is clear evidence of Unfair and deceptive practices by the Defendants and the HOA.

58  The Defendants evicted the tenants without written notices without making any effort to determine the names or tenancy status of occupants or notifying them of their rights to stay under PTFA. Exhibit (H & X & Y).

59  The Defendants made no effort to ascertain the names or the tenancy status of occupants of the subject property, inappropriately using "John Doe" or "unknown tenant" notices to communicate with them.  This is the case here today. Exhibit (A & B).

60  The attorneys for foreclosing HOA sent no notices to vacate to tenants and provided misleading and inaccurate information about the tenants' rights under PTFA, including statements that suggest that PTFA rights apply only to tenants who are current on rent to the former owner or statements that PTFA does not apply to tenants with written leases entered into after the foreclosure action commenced.

61  In this case there was NO effort to communicate the rights of the Defendant under the PTFA.

62  In this case Summary process eviction actions were premature, malicious and in violation of the PTFA.

63  The action was brought against tenants who have unexpired written leases;

64  The Defendant improperly evicted tenants who did not receive the minimum 90-day notice required by PTFA;

65  Summary process evictions actions like this one that do not attach, recite, or plead compliance with applicable PTFA notice requirements are unlawful.

66  The Plaintiff in this action was on time with his lease payments to the owner.

67  The Plaintiff HOA failed to properly notify the Defendant tenants of the property.

68  In this instant case the lender failed to give the tenant a 3-day notice.

A.  The new owner of the foreclosed residential property must honor the Defendants existing lease until the end of the lease term.

B.  To the extent that there was no lease, the Plaintiff still needed to give the Defendant 90 days notice pursuant to the PTFA.

C.  If the new owner who acquired the property at foreclosure wants to occupy the unit as his/her primary residence, then that owner may give you a 90 day notice to vacate your home even if your lease runs for longer than 90 days.

D.  The new owner/bank was required to give the Defendant at least 90 days notice before terminating a tenancy.

69  Under the law, the immediate successor in interest at foreclosure must (a) provide bona fide tenants with 90 days notice prior to eviction and (b) allow bona fide tenants with leases to occupy property until the end of the lease term, except the lease can be terminated on 90 days notice if the unit is sold to a purchaser who will occupy the property, and HOA knew that all the Plaintiffs were resident, tenants there because we all had to meet HOA in 2005 before Dr. Kurt Marin could be approved for the loan to buy the Home and give our ID, fill out Quayside HOA papers and get approved. And we were approved to be tenant, residents and Dr. Kurt Marin was approved as a owner Residence and we resided at quayside and have done so for six years. The HOA gave us as residents car passes to enter into the guard gate, that's why Atty. Richard  Baron wrote orders to the HOA guards saying, we are no longer allowed in Quayside after six years of being tenant, residents and also illegally Evicted the Quayside home owner Dr. Kurt Marin without a Judges Order. Exhibit (H & J= see youtube michaelwarns Maurice going into Quayside gate W:Mack) this shows HOA guard reading the HOA's letter from Atty.

Richard Baron instructing guards to not allow us in Quayside guard gate this also shows that the letter and orders came from Atty. Richard Baron. Also HOA had to approve of us to be put into the Quayside computers as approved HOA residents to have total access to Quayside. see Exhibit (K=see, youtube michaelwarns Maurice coming threw Quayside gate) this shows Maurice coming through Quayside gate with HOA guard matching my face with the face and the name in the Quayside computer to allow a residence entrance to Quayside. Exhibit (K2=see,youtube michaelwarns quayside office) this shows HOA's guards and us looking at Quayside guard computers  to confirm that we were tenant residents at Quayside and had car passes to get through Quayside guard gate. All this shows that they knew we were tenant residents and the Quayside HOA did not keep the PTFA Law. Also Defendants Aurora Loan services and Quayside HOA Exhibit (W) conspired together to violate the PTFA Law by seeking and getting an Eviction enforced on us while Plaintiff Maurice Symonette was in Bankruptcy Exhibit (R, X, Y, and Z= youtube michaelwarns court footage 06:13:12.mov) this shows Plaintiff telling and showing stamped copy of dated FEDERAL Bankruptcy to Dade circuit Judge and both HOA's Atty. and Aurora's Atty. saying his FEDERAL BANKRUPTCY is Active and the PTFA Law was stated to Judge, HOA Atty. and Aurora Atty. by Plaintiff in open court on video and they all ignored and violated FEDERAL BANKRUPTCY and PTFA LAW.

**WHEREFORE,** Plaintiff demands judgment for damages against Defendant QUAYSIDE for actual or statutory damages, and punitive damages, attorney's fees and costs, and treble damages for constructive eviction and other fines or award of $1,000,000 or as the court sees as just.

**VIOLATION OF FLORIDA CONSUMER COLLECTION PRACTICES ACT (FCCPA),**

## FLA. STAT. §559(Part VI) BY DEFENDANTS QUAYSIDE,
### Law Offices of RICHARD BARON & ASSOCIATES

70  Plaintiff alleges and incorporates the information in paragraphs ████████.

71  Plaintiff is a consumer within the meaning of §559.55(2).

72   is a debt collectors within the meaning of §559.55(6).

73  RICHARD BARON & ASSOCIATES LAW FIRM is a debt collectors within the meaning of §559.55(6).

74  RICHARD BARON is a debt collectors within the meaning of §559.55(6).

75  Defendant knew or should have known because Defendant required that Plaintiffs Dept. be paid in HOA's foreclosure case against Plaintiff Dade Circuit case # 12-4200 ca 01 and Exhibits (A, B & H) and was asked to verify Dept. 03/19/12 Exhibit (C), HOA knew or should have known that the debt it was attempting to collect was not legitimate without allowing the Property owner access to the books and records. Yet it attempted to collect that debt anyway, Defendant violated section Florida Statutes 559.72(9), that was pointed out to HOA's Atty. Richard Baron in our filed legal response to their Foreclosure Complaint.

76  Defendant's failure to recognize that they were breaking the law makes these acts malicious and egregious.

77  Defendants violated §559.72(9) and section to section 559.77(2) by claiming, attempting or threatening to enforce a debt when such persons knew that the debt was not legitimate.

**WHEREFORE,** Plaintiff demands judgment for damages against Defendant, QUAYSIDE, RICHARD BARON & ASSOCIATES LAW FIRM, RICHARD BARON for actual or statutory

damages, and punitive damages, attorney's fees and costs, and treble damages for constructive eviction and other fines or awards the court sees as just.

## ABUSE OF PROCESS

78  Plaintiffs repeat, re-allege, and incorporate by reference paragraphs 1 through 42 above.

79  By maintaining the eviction action it filed against Plaintiffs when it knew or should have known that there was no factual basis for it to do so without allowing the Plaintiff access to books and records, Defendant did make improper and perverted use of process.

80  The Defendants failed to yield to conditions precedent because:

    a.  The Defendants denied the Plaintiff and the owner access to the public areas without cause from 2009 other than we are BLACK.

    b.  The Defendants failed to give the homeowner the right to inspect the books and records of the HOA. Exhibit (R, S, and T).

    c.  The Defendants denied the Plaintiff and the owner access to the utitlies.

    d.  The Defendants failed to communicate with the Plaintiff regarding his rights due under the Obama Saving Tenants Act of 2009.

    e.  The Defendants proceeded with an illegal ejection and eviction of the Plaintiff.

    f.  The Defendants illegally entered the Plaitniffs home and itmes where stolen from him.

    g.  The Plaintiff was harmed financially and emotionally.

    h.  The tenants illegally harassed the Plaintiff.

i.  The Defendants threatened legal action when they did not have such a right.

j.  The Defendants called the police on the Plaintiff in an attempt to further evict, oppress and harass the Plaintiff when they had no legal right.

k.  The Defendants insulted the Plaintiff with racial slurs.

l.  The Defendants refused access of the U.S. mails to the Plaintiff and he was not able to check his mail for mail by also changing LOCK.

m.  The Defendants failed to validate a debt.

n.  The Defendants failed to give the Plaintiff a full accounting.

81  Defendants did so for the ulterior purpose of coercing Plaintiffs into paying the amount it demanded, much of which was intended to be paid to Defendant and related entities, Defendant used the risk that Plaintiffs would lose their home through the wrongful eviction to coerce Plaintiffs into paying the sums it demanded.

82  The Defendants illegally, without authority and with malice turned off the water to the Plaintiff's property.

83  The Plaintiff was therefore severely oppressed and without water, and was forced to temporarily make other living arrangements.

84  The Homeowner Kurt Marin filed for bankruptcy protection and in spite, in an intentional and malicious act to inflict harm, oppress and harass Kurt Marin and the Plaintiffs, violated a bankruptcy stay in violation of Bankruptcy code and the rights of Kurt Marin's the Plaintiff.

85  By doing so the Defendants took actions they were otherwise not entitled to thereby injuring the Plaintiff.

86  The Defendants knew or should have known that they were required to respond to the property owners' request for documents.

87  Defendant's actions were willful, wanton and malicious, in reckless disregard of Plaintiffs rights, and done with the specific intent to injure Plaintiffs and hide HOA's misapropiation of HOA's funds

88  The Defendants abused the rights or the Plaintiff for failure to  provide documentation as required by Florida statutes Chapter 720.

89  The Plaintiff is protected under the Obama Saving Tenants Act of 2009.

**WHEREFORE,** Plaintiff demands judgment for damages against Defendant QUAYSIDE, RICHARD BARON LAW FIRM, RICHARD BARON for actual or statutory damages, and punitive damages, attorney's fees and costs, and treble damages for constructive eviction and other fines or awards the court sees as just.

## CIVIL THEFT

90  The Plaintiff is seeking to enforce its civil remedy against the Defendant for the Defendant's violation of a criminal statute, the Plaintiff is seeking to enforce its civil remedy against the Defendant for the Defendant's violation of a criminal statute.

91  An action for civil theft arises from §812.014(1) of the Florida Statutes.

92  Section 812.014(1) is included in the section of the Florida Statutes entitled Crimes.

93  Chapter 812 of the section is entitled Theft, Robbery, and Related Crimes. Generally, §812.014, which is entitled Theft, provides that a person commits theft if he knowingly obtains or uses the property of another with the intent to deprive the other person of the right to the property.

94  The civil cause of action for an injury by theft is provided by §772.11 of the Florida Statutes.

95  Chapter 772 is included in the section of the Florida Statutes entitled Torts. Chapter 772 is entitled Civil Remedies for Criminal Practices.

96  Section 772.11 of Chapter 772 is entitled Civil Remedy for theft or exploitation.

97  The Plaintiff in this action suffered a loss of property by the Defendants and agents of the Defendants.

98  The items taken from the Plaintiff by their trespass had sentimental value.

99  The Plaintiff did not feel safe in his home knowing that the Defendants unknown agents could enter at any time and, under the guise of an unlawful eviction, steel property from the Plaintiff.

100    The defendant knowingly obtained or used, or endeavored to obtain or use, property of another with the intent to either temporarily or permanently deprive the Plaintiff of a right to the property.

101    The Defendant(s) knowingly obtained or used, or endeavored to obtain or use, the plaintiff's property.

102    The intent was "felonious intent" in that the Defendants trespassed on the Plaintiff's property without a right to do so and without a court order or judgment evicting the Plaintiff.

103    The Plaintiff is forever deprived of its right to or a benefit from the property, including property with sentimental value by the Defendant(s) and their agents.

104     Pursuant to §772.11(1) of the Florida Statutes, a person who has been injured by
the theft "has a cause of action for threefold the actual damages sustained." Fla. Stat.
§772.11(1)(Emphasis supplied).

105     A cause of action for civil theft accrues when the plaintiff knows or reasonably
should have known that the defendant property is forever lost and in the hands of
unknown Defendants.

106     The Defendants unknown, trespassed with the felonious intent to deprive the
plaintiff of its right to the property and otherwise dispose of the Plaintiffs property
through illegal means.

107     Pursuant to §772.11(1) of the Florida Statutes, a person who has been injured by
the theft "has a cause of action for threefold the actual damages sustained." Fla. Stat.
§772.11(1).

**WHEREFORE,** Plaintiff demands judgment for damages against Defendant Quayside
H.O.A.,Law Firm of Richard Baron & Associates and Richard Baron for actual or statutory
damages, and punitive damages, attorney's fees and costs, and treble damages for civil theft
resulting from the Defendant's multiple illegal entry into the Plaintiffs property by unknown
Defendants and trespass.


**TRESPASS**


108     After wrongfully performing an illegal eviction on the Plaintiff's home and
ejecting the Defendants, on instructions from management of Quayside unlawfully
entered upon the premisess of the Plaintiff in Miami, Florida.

109     As a proximate result of said trespass the Plaintiff was been deprived of the peaceful enjoyment of his right to tenancy.

110     Because of the willful and oppressive nature of these actions, the Plainiff claim punitive damages as allowed under the law.

111     As a result of their trespass by the Defendants are liable for all natural, proximate and consequential j] damages due to their trespass as well as punitive damages upon a proper evidentiary showing.

112     The Defendants entered the subject property having been "legally" pre-warned not to.

113     In the state of Florida, that crime is defined as trespass.

114     The Defendants continued to attempt to enter the Plaintiffs property despite the fact the Plaintiff and the owner of the subject property continuously warned the Defendants to Cease and Desist the illegal foreclosure.

115     The Plaintiff was injured by the acts of the Defendants.

116     The statutes governing this crime are found in Chapter 810 of the Florida Statutes.

117     The first section is Florida Statute 810.08 that covers "Trespass in a structure or conveyance". This section states anyone who "without being authorized, licensed, or invited" who "willfully enters or remains in any structure or conveyance", or is warned by the owner or lessee of the premises or a person authorized by the owner or lessee to depart, and then refuses to do so – commits the offense of trespass in a structure or conveyance.

118     Violation is a second degree misdemeanor.

119     The Defendants have specialized knowledge of finance and legalese. They knew

or should have known that the illegal act of entering the Plaintiff's home was a violation of his rights and could result in loss of property.  The Defendants unknown have converted the use of said assets for their on personal use.

120     Trespass can be basically defined as unlawfully coming on, or staying on the property of another when you are on notice that your presence is not wanted.

WHEREFORE, Plaintiff prays judgment against defendants and each of them as follows:

    a.   For costs incurred herein;

    b.   For general damages in the sum of one million dollars $1,000,000;

    c.   For general damages for personal injury and mental distress in the sum of two million dollars $2,000,000;

    d.   Punitive damages in the amount of two million five hundred thousand dollars $2,500,000.00

## NEGLIGENCE

121     The management of Quayside and their attorneys were negligent in allowing the unknown Defendants to illegally enter the Plaintiffs property, without cause and with no legal right, and to perform an illegal eviction during which time, many valuable items went missing from the home of the Plaintiff.

122     Accordingly, Defendant engaged in contract that gave rise to an easily foreseeable

risk that Plaintiffs, and others like them, would be injured.

123     Because it engaged in the conduct described above, Defendant had a duty to
protect Plaintiffs from the risk that a eviction action could be erroneously commenced
and wrongfully maintained.

124     Defendant failed to adequately discharge that duty.

125     Furthermore, when it engaged in this conduct, Defendant was aware of the risks
and chose to proceed anyway. Accordingly, in addition to actual damages, Defendant
should be held liable for punitive damages sufficient to deter it from engaging in similar
negligent conduct in the future.

126     Through the acts of these unknown Defendants, many hundreds of thousands of dollars of
jury, cash, and personal items were stolen from the apartment by these Defendants.

127     The management of Quayside failed to properly train and supervise said
Defendants and the Plaintiff has suffered losses as a result.

128     The defendant Quayside is responsible and must maintain insurance to insure the
residents of Quayside from these acts and so, the Defendant Quayside must now make
reparations of damages and pay said amounts to the Plaintiff for losses as a direct result
of their negligence.

**WHEREFORE,** Plaintiff demands judgment for damages against Defendant
QUAYSIDE for actual or statutory damages, and punitive damages, attorney's fees and costs,
and treble damages for constructive eviction and other fines or award of $1,000,000 or as the
court sees as just.


### INFLICTION OF EMOTIONAL DISTRESS

129     The Plaintiff states and reallges all statements made herein.

130     The defendants have intentionally or negligently taken actions which have caused the plaintiffs severe emotional distress.

131     The Defendants engaged in acts to frustrate, oppress, harass and cause emotional distress to the Plaintiff.

132     Wherefore, having set forth various causes of action against the defendants, the plaintiffs pray for fines, monetary compensation and whatever awards this court feels is just.

133     The Defendant, Aurora Bank, HOA and the atty. Richard Baron  by acts taken by the property owner of the filing of a bankruptcy petition, by Kurt Marin and Maurice Symonette Exhibit (U) and were barred from any legal action against the property, on the owner or the Plaintiff.


**WHEREFORE,** Plaintiff demands judgment for damages against Defendant QUAYSIDE for actual or statutory damages, and punitive damages, attorney's fees and costs, and treble damages for constructive eviction and other fines or award of $1,000,000 or as the court sees as just.


## DISCOURGEMENT OF LEGAL FEES
## (UNJUST ENRICHMENT)

134     The Plaintiff adopt and re-allege all prior paragraphs as if set out here in full.

135     The actions of Defendant and Defendant's legal representation  and Prior in obtaining a fraudulent summary judgment or final judgment in an attempt to foreclose on

the home of the Plaintiff in violation of law resulted in Defendant and Defendant's legal representation and Prior being unjustly enriched by the payment of fees, insurance proceeds and equity in the home.

136      As a result of the Defendant and Defendant's legal representation and Prior's unjust enrichment, the Plaintiff have been injured and damaged in that the Plaintiff have lost their rights to due process unless this court intervenes.

137      The loss of their property will result in financial and emotional damages including mental anguish.

138      The Plaintiff claim all damages allowable under law as a result of the Defendant and Defendant's legal representation and Prior' wrongful conduct and unjust enrichment.

**WHEREFORE,** Plaintiff demands judgment for damages against Defendant QUAYSIDE for actual or statutory damages, and punitive damages, attorney's fees and costs, and treble damages for constructive eviction and other fines or award of $1,000,000 or as the court sees as just.

### VIOLATION OF THE FEDERAL FAIR HOUSING ACT AND FAIR HOUSING AMENDMENTS ACT

139      Plaintiff adopt and reallege all prior paragraphs as if set out here in full.

140      The Defendant Richard Baron of the HOA used a derogatory racial slur in referring to the Plaintiff, in his official capacity as a debt collector, in a manner to harass and oppress the Plaintiff and violate his civil rights.

141      The Plaintiff was embarrassed, frustrated, emotionally distressed, and infuriated by the acts of said HOA representative.

142      The Plaintiffs claim all damages allowable under law.

143      The Plaintiff was protected from discrimination.

144      The Federal Fair Housing Act and Fair Housing Amendments Act (42 U.S. Code

§§ 3601-3619, 3631) prohibit landlords from choosing tenants on the basis of a group

characteristic such as:

    i.  race

    ii.  religion

    iii.  ethnic background or national origin

    iv.  sex

    v.  familial status, including having children or being pregnant (except in

        certain designated senior housing), or

    vi.  a mental or physical disability.

145      In this action, the Defendants refused to honor the Plaintiff's lease and states as a

resident of QUAYSIDE.

146      In furtherance of the violation of the aforementioned more fully stated herein, the

Defendant ROBERT BARON insisted removing the Plaintiff and stated "I'm gone get

you little black boys out of Quayside".

147      In refusing to continue allow owners to rent to the Plaintiff, the Defendants

violated the The Federal Fair Housing Act and Fair Housing Amendments Act (42 U.S.

Code §§ 3601-3619, 3631).

**WHEREFORE,** Plaintiff demands judgment for damages against Defendant QUAYSIDE for actual or statutory damages, and punitive damages, attorney's fees and costs, and treble damages for constructive eviction and other fines or award of $1,000,000 or as the court sees as just.

## VIOLATION OF FLORIDA'S FAIR HOUSING ACT

148     Plaintiff adopt and reallege all prior paragraphs as if set out here in full.

149     The Defendant Richard Baron of the HOA used a derogatory racial slur in referring to the Plaintiff, in his official capacity as a debt collector, in a manner to harass and oppress the Plaintiff and violate his civil rights.

150     The Plaintiff was embarrassed, frustrated, emotionally distressed, and infuriated by the acts of said HOA representative.

151     The Plaintiffs claim all damages allowable under law.

152     The Plaintiff was protected from discrimination.

153     Florida's Fair Housing Act prohibits landlords and home sellers to refuse to sell or rent you a home because of your race, color, nationality, gender, disability, family status or religion.

154     In this action, the Defendants refused to honor the Plaintiff's lease and states as a resident of QUAYSIDE.

155     In furtherance of the violation of the aforementioned more fully stated herein, the Defendant ROBERT BARON insisted removing the Plaintiff and stated "I'm going to get you little black boys out of Quayside".

156      In refusing to continue to rent to the Plaintiff, the Defendants violated Florida's

Fair Housing Act.

## STRICT LIABILITY

157      As a direct result of the negligence and malice of the Defendant(s), the Plaintiff

has suffered losses and been injured.

158      The Plaintiff's lost money, property, and heirlooms with great emotional value.

159      The Defendant(s) all are directly responsible for damages to the Plaintiff.

**WHEREFORE,** Plaintiff demands judgment for damages against Defendant

QUAYSIDE for actual or statutory damages, and punitive damages, attorney's fees and costs,

and treble damages for constructive eviction and other fines or award of $1,000,000 or as the

court sees as just.

## HARASSMENT

160      The act of invading the premises of the Plaintiff, shutting off the water illegally,

refusing entry to the property to the Plaintiff, reusing access to public places, refusing

access to the mailbox, refusing access to the elevators, refusing to Cease and Desist

collection activities, calling the police on at least four (4) occasions when the police

advised the Defendants to discontinue harassing the Plaintiff and illegally entering the

premises of the Plaintiff and stealing his personal belongings are acts to oppress and

harass the Plaintiff with malice and otherwise deny him his right to due process and seclusion.

161      As the direct result of the acts by the Defendant(s) acts more fully stated herein, the Plaintiff was maliciously harassed with malice and suffered damages, frustration, deprivation of his rights and emotional distress.

162      The Plaintiff is entitled to damages for harassment by the Defendant(s).

**WHEREFORE,** Plaintiff demands judgment for damages against Defendant QUAYSIDE for actual or statutory damages, and punitive damages, attorney's fees and costs, and treble damages for constructive eviction and other fines or award of $1,000,000 or as the court sees as just.

## ILLEGAL EVICTION

163      Plaintiff adopt and reallege all prior paragraphs as if set out here in full.

164      Defendant and Defendant's legal representation and Prior engaged in an unlawful combination and conspiracy to perform an illegal eviction on the Plaintiff in violation of Florida statutes regarding proper service and a court order needed for eviction.

165      The HOA cutoff the water in an attempt to illegal force the Plaintiff to vacate his property.

166      The motivation for the Defendants to illegally evict the Plaintiff was for discrimination, profit and to hide illegal dept. collection activity, HOA's illegal use of home owners fees and in the interest of time to simultaneously and prematurely evict the

Plaintiff before summary judgment or final judgment was obtained correctly from the appropriate JUDGE.

167     As a result of the illegal eviction, the Plaintiff claim all damages allowed by law.

**WHEREFORE,** Plaintiff demands judgment for damages against Defendant QUAYSIDE for actual or statutory damages, and punitive damages, attorney's fees and costs, and treble damages for constructive eviction and other fines or award of $1,000,000 or as the court sees as just.

## SECOND CLAIM FOR RELIEF
### (WANTONNESS)

168     The Plaintiff restates all prior paragraphs of the pleading as if set out here in full.

169     The Defendants with reckless indifference to the consequences, consciously and intentionally acted to eject the Plaitiff from the home they rightfully had a right to tenancy in.

170     The Defendants with reckless indifference to the consequences, consciously and intentionally instituted this action with the knowledge that the court did not authorize such an act and they did so illegally.

171     These actions were taken with reckless indifference to the consequences, consciously and intentionally in an effort to increase profits for Quayside and frustrate the Plaintiff.

172      As a result thereof The Defendants are liable for all natural, proximate and

consequential damages due to their wantonness as well as punitive damages upon a

proper evidentiary showing.

**WHEREFORE,** Plaintiff demands judgment for damages against Defendant

QUAYSIDE for actual or statutory damages, and punitive damages, attorney's fees and costs,

and treble damages for constructive eviction and other fines or award of $1,000,000 or as the

court sees as just.


### FOURTH CLAIM FOR RELIEF
### ABUSE OF PROCESS

173      The Plaintiff reallege all paragraphs as if set out here in full.

174      The Defendant(s) Law offices of Richard Baron & Associates  and Attorney

Richard Baron at the direction and control of Quayside maliciously obtained the issuance

of the writ or process of ejectment, from the Court in Miami-Dade County, Florida and

had it served on the Plaintiff without properly responding to the request to view books

and records of the HOA, Exhibit (C, D1 & D2) and did not yield to the Bankruptcy stay.

175      Law Offices of Attorney Richard Baron & Associates and Attorney Richard

Baron abused the said writ or process because they ejected the Plaintiff from their home

with the knowledge that they have a right to due process and tenancy of the subject

property, claiming we weren't resident tenants knowing we were for six years. See HOA

guards saying we are residence in the computers of HOA's list of Residents with

Plaintiffs tenants Alfred Davis, James Littlejohn and owners Dr. Maurice Symonette and

Dr. Kurt Marin, the only way you are listed in the HOA's computers as residents is you had to apply with the HOA and be excepted and give a copy of your Drivers License so that you could enter in the gate after guards matched your face on HOA's computers. Yet Defendants Evicted us claiming we weren't residents after six years of living there. see Exhibit (W, & on YouTube michaelwarns quayside office).

176     The Plaintiff as tenant was protected as a tenant under the Obama Saving Tenants Act and should not have been evicted.

177     The Owner of the unit Kurt Marin filed a bankruptcy which superseded any collection activity attempts by the Defendants.

178     The Plaintiff and Kurt Marin were improperly served.

179     The Plaintiff and Kurt Marin were not allowed to view books and records and complete discovery before summary judgment.

180     As the proximate result of Morris, Schneider and Prior's abuse of the said writ or process, the Plaintiff were caused to suffer injuries and damages, also, reasonable attorney's fees incurred in defending the abusive writ.

181     Defendants Aurora, Quayside HOA and Atty. Richard Baron conspired to illegally evict Plaintiffs as stated by Aurora rep. Exhibit (E) while Defendant Dr. Maurice Symonette's Bankruptcy Stay was active Exhibit (R), Defendants knowingly violated the US Bankruptcy Stay Exhibit (X & Y) to show us that BLACK PEOPLE have no rights and that no matter how we keep the law it is hopeless. Defendants illegally evicted us refused to let us in the Quayside gates while our property was laying out in the rain  and

although Bankruptcy Judge ordered Defendants to allow us back in they didn't and we lost all of our furniture and property on a holiday (July 4th), while we were out of town with the help of the sheriffs who also knew we were in Bankruptcy and told us that as long as we were in bankruptcy the sheriffs would unless they had the Federal JUDGES ORDER TO DO SO. Exhibit (

182        48. The Plaintiff claim all damages allowable under law.

WHEREFORE, Plaintiffs prays judgment against defendants and each of them as follows:

(1) For costs incurred herein;

(2) For general damages in the sum of one million dollars $1,000,000;

(3) For general damages for personal injury and mental distress in the sum of two million dollars $2,000,000;

(4) Attorney fees in amount of $250.00 per hour; and

(5) Punitive damages in the amount of two million five hundred thousand dollars $2,500,000.00.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor for actual damages, punitive damages, and litigation costs.

**<u>DEMAND FOR TRIAL BY JURY</u>**

MAURICE SYMONETTE, PRO SE

10671 N.E.Quaybridge ct.

Miami Shores Fl. 33138 unit C-11

KURT MARIN, PRO SE

10671 N.E. Quaybridge ct.

Miami Shores FL. 33138 unit C-11

ALFRED DAVIS, PRO SE

10671 N.E. Quaybridge ct.

Miami Shores Fl. 33138 unit C-11

JAMES BUCKMAN, PRO SE

 10671 N.E. Quaybridge ct.

Miami Shores Fl. 33138 unit  C-11

JAMES LITTLEJOHN, PRO SE

10671 N.E. QUAYBRIDGE ct.

Miami Shores Fl. 33138 unit C-11